**SWIFT AND COMPANY, Appellant,**

v.

**POSTON FARMS, INC., Appellee.**

**No. 4110.**

Court of Civil Appeals of Texas.

Eastland.

March 3, 1967.

Rehearing Denied March 24, 1967.

C. O. McMillan, Stephenville, for appellant.

Joseph A. Chandler, Stephenville, for appellee.

GRISSOM, Chief Justice.

Poston Farms, Inc., obtained a judgment against Swift and Company for breach of a contract to buy eggs laid by turkey poults that it purchased from Swift. Swift and Company has appealed.

A jury found (1) that Poston and Swift had a contract that Poston would purchase Swift's turkey poults at a premium price and Swift would purchase at a premium price the eggs they laid; (2) that it was not a part of the agreement that Poston's flock had to meet the standards of the National Turkey Improvement Plan "by being, in the trade, a disease free flock"; (3) that Clausen, Swift's representative, told Berry, Poston's manager, that Swift would purchase the eggs, even if the flock was infected, provided Poston moved his chicks from their location adjacent to the turkeys and (4) that Poston did move the chicks within a reasonable time.

It is undisputed that for several years Poston Farms, Inc., purchased poults from Swift and Company under an agreement that Swift would purchase the eggs laid by them. In April 1962, Swift again proposed to Poston Farms that it buy poults from Swift, as it had on previous occasions, for the purpose of producing turkey eggs to sell to Swift. It was agreed that Poston would pay Swift twice the price then being paid for poults bought for growth and sale as meat and that, although Poston had recently bought some "meat" poults from Swift for 45¢, it paid 95¢ each for these poults. It was further agreed that Poston would buy its turkey feed from Swift, first a "turkey starter" and later "turkey grower", and that, if the poults and turkey feed were bought from Swift, it would purchase Poston's eggs at a premium price, as it had on previous occasions. It was un-

disputed that, after the poults had been purchased by and delivered to Poston, a representative of a turkey improvement organization found that baby chicks were being kept near the turkeys and notified both Poston and Swift that the turkeys would for that reason not qualify; that Poston's representative immediately contacted Swift's representative and the manager of Poston specifically asked Swift's agent what would happen if the chickens were moved, but, nevertheless, the turkeys did not pass the tests. Whereupon, Swift's agent said "You move the chickens and we will take the eggs from the turkeys." That, relying on this promise, Poston moved the chickens to a different farm and hired another caretaker; that, thereafter, Clausen, acting for Swift, came to Poston Farms and culled its turkey flock, leaving 1083 hens and 132 toms, the culls being then sold on the market for meat. It was undisputed that after the chickens were moved the turkeys were culled by Swift and Poston continued to feed the remaining turkeys the feed required by Swift and that Poston Farms was damaged $7,103.16 by the refusal of Swift to purchase the eggs.

Appellant's first three points are, in effect, that the court erred in rendering judgment for Poston because the testimony of plaintiff's agent, Berry, was insufficient to form an enforceable contract. That is the gist of appellant's contention. In an excellent brief, Swift contends that the agreement between the manager of Poston Farms and Clausen that, if Poston move the chickens, regardless of the results of tests thereafter, Swift would buy the eggs; that this was not a binding contract; that Swift's liability was limited by a written guaranty which stated that it authorized no one to assume any other liability in connection with the sale of its poults and that Poston had accepted delivery under the terms of said guaranty. Swift contends that it participated in the P.P.L.O. testing program of the Poultry Improvement Board of the Texas Poultry Improvement Association and a State agency designed to

cooperate with the United States Department of Agriculture in administering the National Turkey Improvement Plan and that such Board was authorized to establish and promulgate regulations and supervise and carry out the approved plan by Article 165-7; that Draper, a supervisor of said organization found the turkeys penned close to a brooder house containing baby chicks and notified Swift and Poston that, for that reason, he could not certify the turkeys were free from "P.P.L.O."; that to obtain such a certificate all chickens must be moved from the premises, a test of at least 10 percent of the turkeys must be made within 30 days thereafter and found negative and that after 60 days another negative test of at least 10 percent must be made; whereupon, the Turkey Plan Agency would then certify that Poston's turkeys were free from P.P.L.O.

We agree with appellee that neither the written guaranty, nor the action of the Turkey Improvement Board and its rules and regulations control the decision. The controlling question is: was there a contract for Swift to purchase the eggs. The jury found there was. There was ample evidence to support that finding. The terms of the original contract were undisputed. When the agent for the Improvement Association wrote the parties that he would not certify the eggs because chicks were penned near by, Poston contacted Swift and Swift then agreed that if the chickens were removed, and the jury found they were, that Swift would buy Poston's eggs, regardless of the results of future tests. This constituted a valid contract. There was consideration therefor. Poston Farms could have sold the turkeys at a profit for meat and would have done so but for Swift's promise to buy the eggs regardless of the results of future tests. Poston continued to carry out its contract, it moved the chicks to another farm and hired another handler for them, it continued to feed Swift's feed and had the turkeys culled by Swift for the production of eggs to be purchased by Swift at a premium price. The court did not err in rendering judgment for Poston, based, at least, in part on the evidence that Clausen, the manager of Swift's Hatchery Department and its representative in dealing with Poston, had supervised the dealings between these parties on two previous occasions, when Poston had bought Swift's poults, fed Swift's feed and sold Swift the eggs produced. Clausen had acted and spoken for Swift on matters concerning the turkeys on these former occasions, as on this occasion. He acted for Swift in accomplishing the end results of its turkey hatching program. Clausen, the agent for Swift who made the promise that induced Poston to take the action that caused its damages, knew Poston well; they had been the actors for said companies in carrying out this and two other like contracts. Plaintiff's pleadings and testimony was to the effect that but for the promise of Clausen that, if the chickens were moved, the eggs would be purchased regardless of the results of future tests the turkeys would have been sold for meat and its loss avoided. There was evidence that, acting on this agreement, Poston did not make the profit it could have made by selling turkeys for meat but kept them to produce eggs for sale to Swift under their contract. Reverting again to the gist of appellant's contention, this is not a suit on Swift's guaranty. This is a suit for breach of contract, based on Poston's reliance on the promise of Clausen to purchase Poston's eggs. We cannot agree with appellant that the requirements of the National Turkey Plan Agency constitute a defense. The jury found, as it had a right to do under the evidence, that its requirements were not a part of the contract. The authorities cited by appellant have been properly distinguished in appellee's brief. They do not require a different conclusion. Appellant cannot successfully contend that the agreement of Clausen to take the eggs was merely a statement of future intention for which Swift could not be held responsible. His statement was an offer which was accepted and acted

upon by Poston to its detriment. A binding contract followed. 13 Tex.Jur.2d 186.

All of appellant's points have been considered and are overruled. The judgment is affirmed.